UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

DEBRA LEE                                                                                    PLAINTIFF

v.                                              CIVIL ACTION NO. 3:12-CV-765-DW

CAROLYN W. COLVIN, ACTING COMMISSIONER
OF SOCIAL SECURITY                                                                    DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Debra L. Lee, has filed a complaint pursuant to 42 U.S.C. §1383(c) to obtain review of a final decision of the Commissioner of the Social Security Administration (SSA).[1] On July 24, 2009, the SSA awarded Lee supplemental security income (SSI) benefits pursuant to a decision by an administrative law judge finding Lee to be disabled (Tr. 33-45, 607-28).[2] Following the favorable decision, the SSA district office contacted Lee to obtain current information regarding her income and resources to confirm her eligibility for SSI payments (Tr. 48-50).[3] As a result of this contact, Lee completed a review statement that provided additional information related to her SSI claim (Tr. 48-50, 56-57).

Lee advised the SSI caseworker that her former husband, Gordon Lee, had paid her monthly rental and utility expenses, and provided her with $600 per month for her daily living expenses (Tr. 48-50, 56-57). Lee also produced two handwritten documents (Tr. 47, Supp. Tr. 629). The two undated, single-page "To Whom It May Concern" documents were signed by

---

[1] On February 14, 2013, Carolyn W. Colvin, became the Acting Commissioner of Social Security. In accordance with Fed.R.Civ.P. 25(d), the Court has substituted Acting Commissioner Colvin for former Commissioner Michael J. Astrue as defendant in this suit. See 42 U.S.C. § 405(g).

[2] On July 24, 2009, ALJ Eduardo Soto issued a hearing decision in which he found that Lee's severe impairments of Lumbar degenerative disk disease with radicular pain, precluded her from performing even unskilled sedentary work so as to render her disabled beginning on Oct. 15, 2004 through the date of ALJ Soto's decision (Tr. 37-45).

[3] At the time that Lee applied for SSI benefits on Feb. 9, 2006, she reported on her application that she was married to Gordon Lee, lived in an apartment in Louisville, Kentucky, and had only a single checking account containing $3,900 as her sole financial resource (Tr. 147-48).

Lee and her ex-husband (Id.). Each of the documents acknowledged that Gordon D. Lee had since 2005 loaned his former wife monthly amounts of money for housing, utilities, daily living expenses and insurance (Id.).

The first of these two holographic notes provided:

> To Whom It Concerns,
> I Gordon D. Lee have agreed to pay Debra L. Lee for living expenses since approximately 2005, because of her health, with the understanding of repayment. The amounts are listed approximate monthly:
>
> | | |
> |---|---|
> | Housing | $550 |
> | Daily living | $600 |
> | Utilities | $100 |
> | Insurance | $150 |
> | Total | $1,300 monthly [sic - - $1,400] |
>
> I am currently unemployed and unable to continue.
> Signed /Debra L. Lee
> Gordon D. Lee

(Supp. Tr. 629).

The second handwritten note, similar to the first note, stated:

> To Whom It Concerns,
> I Gordon D. Lee have agreed to pay Debra L. Lee for living expenses, because of her health, with understanding of repayment. The current amounts are listed approximate per month:
>
> | | |
> |---|---|
> | Housing | $735 |
> | Daily living | $600 |
> | Utilities | $100 |
> | Insurance | $150 |
> | | $1,585 monthly |
>
> I am currently unemployed and unable to continue.
> Signed /Gordon D. Lee
> [incomplete signature Debra Lee]

(Tr. 47).

As a result of this new information reflected in a report of contact (Tr. 50), the SSA determined that Lee had received a monthly loan of $1,300[4] from February of 2006, through May of 2009, for a total amount of $50,700. The SSA also determined that Debra Lee received $1,585 during a one-month period of June 2009 through July 2009, which when added to the prior $50,700 loan amount, resulted in a total loan to her from her now ex-husband of $52,285.

The SSA reviewed these two alleged loan documents to determine whether they satisfied the requirements for a bona fide loan as set forth in the Programs Operations Manual System (POMS) SI 001120.220 (cash loans) and POMS SI 00835.482 (loans of in-kind support and maintenance). The agency, based on these authorities, determined that the two notes created enforceable loans under Kentucky state law that were in effect at the time of the transactions and contained an acknowledgement of Debra Lee's obligation to repay (Tr. 50). The SSA then continued, however, to conclude that no plan for repayment of the two loans existed based merely on the language "with understanding of repayment" contained in the notes (Tr. 50). Further, it determined that repayment of the loans was not feasible even if a repayment plan existed, given the total amount of the outstanding loans of $52,285 in light of Lee's current monthly living expenses of $1,585 and the maximum amount of $674of her potential SSI payment. In this respect, the SSA concluded in its report of contact that "there is no way the claimant could pay her bills alone, much less start repaying the loan, therefore the loan is not bona fide." (Id.). Consequently, the SSA concluded that Lee had excess income from February 2006, to May of 2009, and for the period June 2009, to July 2009, so that she was not eligible for SSI benefits for those months.

---

[4] As previously noted, the monthly amount of $1,300 contained in the first handwritten note is incorrect. When the column of expense payments is added, the actual amount of monthly expenses paid by Gordon D. Lee to Debra Lee is $1,400, as recognized by the ALJ (Tr. 18, 20, 22).

~ 3 ~

Lee requested reconsideration of this determination, arguing that it was contrary to fact and law (Tr. 54). On October 5, 2009, the SSA affirmed its determination that Lee had excess income for the stated time periods (Tr. 51-54, 60-62). In other words, the SSA determined that Lee was not eligible for SSI benefits until August of 2009, due to the excess income discussed above (Id.). Lee filed a request for a hearing before an ALJ (Tr. 63-64). ALJ Emery Curlee conducted a hearing on Feb. 10, 2011, in Louisville, Kentucky, which Lee attended with her attorney, Alvin Wax (Tr. 593-606).

At the hearing, attorney Wax explained that his client's case was "an underpayment case" in which she won her SSI disability claim, but the SSA "district office decided not to pay her because of what they claimed to be income and resources." (Tr. 596). Counsel argued that the amounts received from her husband were bona fide loan agreements (Tr. 596). Counsel's argument focused on the requirement of feasibility of repayment of the loans - - a requirement that he maintained is to be found nowhere in the Code of Federal Regulations in 20 C.F.R. 416.1103f, or in Social Security Ruling (SSR) 92-8p. Neither the cited regulation nor the SSR, according to counsel, mentions the feasibility of repayment requirement found in the POMS, nor does the state law of Kentucky include a feasibility requirement as a precondition for a valid loan contract (Tr. 597).

Further, counsel pointed out to the ALJ that the feasibility of repayment requirement does not specify the point in time at which feasibility is to be determined, i.e., the time that the loan was created or the time of the initial disability determination, or some other later date (Tr. 598). Citing to POMS SI-00835.482, on in-kind support and maintenance, counsel noted that an individual's resources and income for repayment under this provision of POMS includes anticipated income, which in this particular claimant's situation would include public
~ 4 ~

housing, and back payments of SSI disability benefits, which in Lee's case would be between $25,000 and $26,000-- an amount sufficient to potentially pay off nearly half of the outstanding balance due on the two notes (Tr. 599). Accordingly, counsel concluded his argument that no statutory or regulatory basis exists for the SSA to insert a feasibility of repayment requirement where none is mentioned in the regulations, the federal statute or in Kentucky contract law, which the SSA acknowledges creates a bona fide contract in the present case (Id.). Whether the loans will ever be repaid, according to counsel, is merely a private matter between the creditor and debtor, and not a matter for the federal government, which has no authority in that regard (Id.).

The ALJ Curlee's response to the argument was to consider it to be "an affront." (Tr. 600). Curlee observed that "it's obvious that she cannot repay it ..." adding that, "I think this is a facetious, a transparent, a facetious poorly cobbled argument… . I think it's a façade and I don't agree with you one minute." (Tr. 600-601). At this point, the claimant interjected in the proceedings, stating that she owed her ex-husband the debt for the monies that he had loaned her, even if she "paid him $200 a month for 100 - - you know - - until I die." (Tr. 602). ALJ Curlee then attempted to conclude the proceedings, but acknowledged the need to develop the factual record at the request of counsel.

The claimant then testified that her ex-husband had loaned her money to pay her rent, insurance, prescriptions, food and utilities (Tr. 603). He had paid these monies to her in the form of a loan until he lost his own job (Tr. 604). She acknowledged that she has applied for public housing and potentially could receive SSI back pay (Tr. 604). Lee also testified to the existence of the two written contracts evidencing the loans (Id.). The ALJ then examined the one

loan document then available, which he observed "doesn't look like a bona fide contract to me." (Tr. 605). The ALJ noted that the one-page document was undated.

ALJ Curlee then concluded the hearing, indicating that he would enter an adverse written decision that the claimant could "take to the Appeals Council." (Tr. 606). On April 8, 2011, ALJ Curlee kept his promise and entered an adverse decision based on POMS SI-01120.220 in which he concluded that repayment of the "loan" as described by the claimant was not feasible, and that there was no realistic anticipation of repayment (Tr. 16-23). Accordingly, despite finding that the loan agreements could be enforced under Kentucky law, he concluded that the parties to the agreement never contemplated any plan or schedule of repayment, and that repayment by the claimant "of this ever-increasing debt was not feasible." (Tr. 23). The ALJ therefore held that the monies that Debra Lee received from February of 2006, through July of 2009, were not the proceeds from a bona fide informal loan, but were unearned income to the claimant that rendered her ineligible to receive monthly SSI payments from February 2006, through July of 2009 (Tr. 23).

Lee requested review of ALJ Curlee's decision by the Appeal Council (Tr. 13). The Appeals Council determined that no basis existed under the regulations to grant her request for review (Tr. 8-11). Lee then brought the present lawsuit on Nov. 19, 2012 (DN 2). Both parties have filed a fact and law summary (DN 13, 18). The administrative record, along with a supplemental administrative record, have been filed by the SSA (DN 10, 17). Accordingly, the matter is now ripe for review.

**Legal Analysis**.

Review of the decision of the ALJ Curlee is governed by 42 U.S.C. § 405(g). The statute, and case law that interprets it, requires a reviewing court to affirm the findings of the Commissioner if they are supported by substantial evidence and the Commissioner has employed the appropriate legal standard. *Walters v. Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997) ("This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record."). Substantial evidence is defined by the Supreme Court to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). *See also, Lashley v. Sec'y of HHS*, 708 F.2d 1048, 1053 (6th Cir. 1983) (citing *Perales*). It is more than a mere scintilla of evidence or evidence that merely creates the suspicion of the existence of a fact, but must be enough evidence to justify a refusal to direct a verdict if the matter were tried to a jury. *Sias v. Sec'y of HHS*, 861 F.2d 475, 479 n. 1 (6th Cir. 1988).

The substantiality of the evidence is to be determined based upon a review of the record taken as a whole, not simply some evidence, but rather the entirety of the record to include those portions that detract from its weight. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); *Laskowski v. Apfel*, 100 F. Supp.2d 474, 482 (E.D. Mich. 2000). So long as the decision of the Commissioner is supported by substantial evidence, it must be upheld by the federal court even if the record might support a contrary conclusion. *Smith v. Sec'y of HHS*, 893 F.2d 106, 108 (6th Cir. 1989). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).

**SSI Eligibility.**

The Supplemental Security Income Program arose in 1972, with an effort by Congress to streamline existing welfare programs. *See Ramey v. Reinertson*, 268 F.3d 955, 957-58 (10th Cir. 2001). Existing welfare programs then known as Old Age Assistance, Aid to the Blind, and Aid to the Permanently and Totally Disabled were combined into the new SSI program for the aged, blind and disabled. *Id*. (citing *Gray Panthers*, 453 U.S. at 38 ("Congress replaced three of the four categorical assistance programs with [SSI]"). The purpose of the new SSI program "was to afford cash assistance for basic necessities … to disabled persons who met the resource eligibility requirements." *Id*. (citing *Miller v. Ibarra*, 746 F.Supp. 19, 23 (D. Colo. 1990)). *See also, White v. Apfel*, 167 F.3d 369, 376 (7th Cir. 1999) (Congress created the SSI program "to guarantee a minimum subsistence income level for the aged, blind and disabled persons.").

Eligibility to receive SSI benefits, as well as Medicaid, is dependent upon an applicant's income and resources. 42 U.S.C. §1382; 20 C.R.F. §416.1100; *Roch v. Morse*, 440 F.3d 53, 59-60 (2nd Cir. 2006). If an SSI applicant's available assets exceed the statutory ceiling, then he or she will not be eligible for benefits. See 42 U.S.C. §1396a(A)(10)(I)(II). An SSI applicant's resources ordinarily will include cash and any other personal property, as well as real property, that an individual, or his or her spouse, if any, owns. See 20 C.F.R. §416.1201(a). Property other than cash is considered to be a resource if the individual has the right, authority or power to liquidate the property or his or her share of it. 20 C.F.R. §416.1201a(1). Under the SSI regulations, a loan may also be considered to be income to the applicant depending upon whether the loan satisfies certain criteria established by the SSA, either by federal regulation or by the

Administration's Program Operating Manual System (POMS). See POMS SI 01120.220(C) (cash loans); SI 00815.350 (proceeds of a loan); and SI 00835.482 (loans of in-kind support and maintenance).

The POMS are "publicly available operational instructions for processing Social Security claims" and "while these administrative interpretations are not products of formal rulemaking, they nevertheless warrant respect." *Peabody v. Astrue*, 2009 WL 1117172 at *3 (D.N.H. Apr. 23, 2009) (quoting *Washington Dept. of Soc. Svs. v. Keffeler*, 537 U.S. 371, 385 (2003)). Courts accordingly will defer to POMS provisions unless they are arbitrary, capricious, or contrary to existing law. *Ramey v. Rainertson*, 268 F.3d at 964; *Peabody*, 2009 WL 1117172 at *3.

The POMS will not be given deference to the extent that a POMS provision contradicts a Social Security regulation. *Fast v. Barnhart*, 397 F/3d, 468, 472 (7th Cir. 2005); *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999); *United States v. Mead Corp.*, 533 U.S. 218, 227-28 (2001) (When Congress has explicitly left a regulatory gap for an agency to fill, any ensuing regulation to fill such gap is "binding in the courts unless it is procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute."); *Bragdon v. Abbott*, 524 U.S. 624, 642 (1998) ("The well reasoned views of agencies implementing a statute 'constitute a body of experience and informed judgment to which courts and litigants may property resort for guidance.") (quoting *Skidmore*, 323 U.S. at 139-140). *See gen., Skidmore v. Swift Co.*, 323 U.S. 134, 140 (1944) (observing that the interpretation and opinions of an executive branch administrator, while not controlling on the courts merely by reason of the administrator's authority, "do constitute a body of experience and informed judgment to which the courts and litigants may properly resort for guidance".)

Here, ALJ Curlee directly relied on POMS SI01120.220(C) at pp. 3-6 of his hearing decision. Curlee phrased the issue as one "to determine whether the arrangement before us is a bona fide loan or a fictional agreement cobbled as an afterthought to take advantage of the agency's largess." (Tr. 19). Curlee then proceeded to set forth the five factors of POMS SI01120.220(C) that determine whether a claimant's receipt of money or in-kind goods are the proceeds of a bona fide loan or unearned income. As noted, money received by an individual pursuant to a bona fide loan agreement is not income. See POMS SI 00815.350 (proceeds of a loan).

Under subsection D of POMS 01120.220, an informal loan, a loan between individuals who are not in the business of lending money or providing credit, will be considered by the SSA to be bona fide if it meets the five following requirements, as set forth in ALJ Curlee's opinion at pp. 3-4.

1. The loan agreement must be enforceable under applicable state law.

2. The loan agreement must be in effect when the lender provides the cash to the borrower.

3. The lender and the borrower must both acknowledge the obligation to repay.

4. The loan must include a plan or a schedule for repayment.

5. The repayment plan must be feasible.

POMS SI01120.220(D).1-5.

With respect to the final requirement, the feasibility of repayment, the Operations Manual explains that the SSA will consider the amount of the loan, the claimant's resources and income, and his or her living expenses in determining the feasibility of repayment. Id. Further, in requirement no. 4, the plan for repayment requirement, the Operations Manual further explains

that "the claimant may use " anticipated income such as … Title XVI … benefits to establish a plan for a feasible repayment of the loan as long as the loan states the claimant must pay the money back."  POMS SI01120.220(D)(4)-(5).  ALJ Curlee, as noted, found that Lee had failed to satisfy the final two requirements to establish a bona fide loan.  She had not shown any plan for repayment of either of the two notes.  Additionally, she had not shown that any potential repayment plan would have been feasible given the outstanding amount of the loans, over $52,000, and her anticipated monthly expenses, which ALJ Curlee estimated to be approximately $900 per month in contrast to Lee's potential monthly SSI payment of slightly over $674 beginning in 2009 (Tr. 22).

Lee in her fact and law summary now insists that ALJ Curlee applied the wrong law (DN 13, p.3). In her view, the correct law is found in SSR 92-8p and its definition that "a loan means an advance from lender to borrower that the borrower must repay, with or without interest."  SSR 92-8p, 1992 WL 466905 at *2.  The same regulation provides that "the loan agreement may be oral or written, as long as it is enforceable under state law."  *Id*.  Immediately following this quoted language in SSR 92-8p is the following language, which Lee relies heavily upon to support her claim that the feasibility of repayment is not an element found in the regulation.

> 2. Any advance an SSI applicant or recipient receives that meets the above definition of a loan is not income for SSI purposes since it is subject to repayment.

*Id*. Lee argues that the above quoted provision immediately supersedes the two cases cited by ALJ Curlee in his hearing decision, *Hickman v. Bowen*, 803 F.2d 1377, 1382 (5th Cir. 1986) and *Cequerra v. Sec'y of HHS*, 933 F.2d 735 (9th Cir. 1991).  Consequently, Lee concludes that

that "the claimant may use " anticipated income such as … Title XVI … benefits to establish a plan for a feasible repayment of the loan as long as the loan states the claimant must pay the money back."  POMS SI01120.220(D)(4)-(5).  ALJ Curlee, as noted, found that Lee had failed to satisfy the final two requirements to establish a bona fide loan.  She had not shown any plan for repayment of either of the two notes.  Additionally, she had not shown that any potential repayment plan would have been feasible given the outstanding amount of the loans, over $52,000, and her anticipated monthly expenses, which ALJ Curlee estimated to be approximately $900 per month in contrast to Lee's potential monthly SSI payment of slightly over $674 beginning in 2009 (Tr. 22).

Lee in her fact and law summary now insists that ALJ Curlee applied the wrong law (DN 13, p.3). In her view, the correct law is found in SSR 92-8p and its definition that "a loan means an advance from lender to borrower that the borrower must repay, with or without interest."  SSR 92-8p, 1992 WL 466905 at *2.  The same regulation provides that "the loan agreement may be oral or written, as long as it is enforceable under state law."  *Id*.  Immediately following this quoted language in SSR 92-8p is the following language, which Lee relies heavily upon to support her claim that the feasibility of repayment is not an element found in the regulation.

> 2. Any advance an SSI applicant or recipient receives that meets the above definition of a loan is not income for SSI purposes since it is subject to repayment.

*Id*. Lee argues that the above quoted provision immediately supersedes the two cases cited by ALJ Curlee in his hearing decision, *Hickman v. Bowen*, 803 F.2d 1377, 1382 (5th Cir. 1986) and *Cequerra v. Sec'y of HHS*, 933 F.2d 735 (9th Cir. 1991).  Consequently, Lee concludes that

"given that the issue [of repayment feasibility] was specifically encompassed in the case law that the ruling was based on, the ruling rejects the issue of feasibility."

The Court is compelled to reject this reasoning for several important reasons. First, SSR 92-8p was not put in force to eliminate the holdings of *Hickman* or *Cequerra*, both of which held that no justification existed for different treatment of cash or in-kind income as being a loan under 20 C.F.R.416.1103(f). In other words, *Hickman* and *Cequerra*, which adopted the rationale of *Hickman*, held that food or shelter provided by a householder to a household member, similar to cash, could be treated as a loan if the household member was obligated to repay the debt.

The SSA in 1988 issued an Acquiescence Ruling (AR) 88-7(5) to implement the *Hickman* decision for those individuals that resided in the Fifth Circuit to provide guidance in those situations in which a recipient received in-kind support and maintenance. After the Ninth Circuit rendered its decision in *Cequerra*, the SSA was faced with the prospect of issuing yet another acquiescence policy similar to AR 88-7(5) for claimants that resided in the Ninth Circuit. Rather than issue another acquiescence policy, the SSA merely "decided to reinterpret its regulations on the treatment of advances of food and shelter to an SSI applicant or recipient by an individual in whose household he or she is residing." SSR 92-8p, 1992 WL 466905 at *2. In other words, SSR 92-8p merely reconciled existing law to avoid the issuance of another acquiescence policy on the treatment of advances of food or shelter to a household member as a loan, similar to the actual advancement of cash. The new Social Security regulation did not set aside either *Hickman* or *Cequerra*, nor did it eliminate the requirement that any repayment plan be feasible.

This conclusion is confirmed, in part, by paragraph 3 of the policy interpretation of SSR 92-8p. In paragraph 3, the regulation provides that "when money or an in-kind advance in lieu of cash is given and accepted **based on any understanding other than that it is to be repaid** by the receiver, there is no loan involved for SSI purposes. It could be a gift, support payments, in-kind support and maintenance, etc., and must be treated as provided for in the rules applicable to such items." SSR 92-8p, 1992 WL 466905 at *3(emphasis added). This language strongly suggests to the Court that an understanding of repayment - - a bona fide understanding based upon the reality of the creditor and debtor's financial situation - - is at a minimum implied by the regulation.

Further, even if that were not so, then the regulation is merely silent on the question so that the Commissioner in the exercise of his or her authority has the power to "fill the gap" by the provisions of the POMS such as POMS SI 01120.220(D). As numerous courts have noted, the policy statements contained in the POMS are to be deferred to unless they are shown to be arbitrary, capricious or contrary to law. *Ramey*, 268 F.3d at 964 n.2; *McNamar*, 172 F.3d at 766; *McLearen*,2010 WL 4318579 at *6; *Peabody v. Astrue*, 2009 WL 1117172 at *3. Accordingly, while these administrative interpretations such as POMS SI01120.220(D) are not the product of formal rulemaking themselves, "they nonetheless warrant respect …." *Keffeler*, 537 U.S. at 385.

We see no reason to render these provisions under POMS SI01120.220(D) any less respect that the other federal courts that have routinely applied them. *See Roach*,440 F.3d at 59-60 (discussing SI 01120.220(D) in the context of Vermont's Medicaid and the SSI regulations); *Wesner v. Velez*, 2010WL 1609674 at *3 (D.N.J. Apr. 19, 2010) (discussing SI 01120.220 in the context of the federal Medicaid and SSI provisions); *Santillio v. Comm'r*, Case

No. 1:11-CV-468, 2012 WL 1458107 at *3-5 (N.D. Ohio Mar. 30, 2012). Given that no published or unpublished federal decision appears to reject the feasibility of repayment requirement of POMS SI 01120.220(D) based upon the language of SSR 92-8p, and given that the above cited federal decisions continue to apply POMS SI 01120.220 long after the adoption of 92-8p, the Court rejects Lee's initial argument.[5]

Lee in her fact and law summary also argues that ALJ Curlee improperly calculated her financial ability to repay the outstanding $52,000 debt. She points out that her anticipated monthly expenses would be significantly reduced by her eligibility for public housing and food stamps (DN 13, p. 4). Further, if awarded her back SSI payments, she would have a fund of approximately $26,000 to pay toward a substantial reduction of the outstanding debt. Therefore, when one examines Lee's anticipated financial ability to make repayment, rather than her circumstances at the time the loans were first originated years earlier, Lee maintains that substantial evidence does not support the ALJ's decision, but rather establishes that repayment of the loans made by her ex-husband is entirely feasible.

The Court is compelled to disagree with Lee's final argument. ALJ Curlee properly considered not only Lee's anticipated monthly expenses, but the value of her potential monthly SSI payment in his hearing decision at p. 6 (Tr. 22). By his calculations, Lee had no realistic possibility of repaying the loans over any reasonable period of time. Just as importantly, the notes themselves, as well as the known circumstances surrounding their creation, revealed no existing plan for repayment, as ALJ Curlee noted at p. 5 of his hearing decision, where he pointed out that the two notes were not dated, had no definite beginning date for when the cash

---

[5] The Court also rejects the harsh characterization of Lee's arguments by ALJ Curlee. Nothing in the arguments of the claimant appears to the Court to be in any fashion "an affront." Although one may reasonably question the circumstances under which the two notes were created, along with the genuine intention of the parties to make repayment, the arguments raised are colorable ones under both the facts and the cited law.

advances were to commence and no definite time set out for when they would terminate or when repayment of the advances would be due or how it would be paid (Tr. 21). As the ALJ correctly noted, the two memoranda "provided no definite terms about when or how the claimant was to repay these advances." (Id.). Thus, aside from the feasibility of repayment, the notes simply gave no indication on their face of the existence of any meaningful plan for repayment. Lee therefore failed to carry her burden of proof on both the fourth and fifth factors under POMS SI 01120.220. The Commissioner therefore did not err in either her finding of the facts or her application of the law in concluding that Lee was ineligible for SSI benefits prior to August of 2009. The Court therefore shall enter a separate judgment that affirms the decision of the Commissioner and dismisses Lee's complaint with prejudice.

Copies: Counsel of Record